TEPATASI M. PUAILOA, Claimant

v.

TUITOGAMAATOE PUAILOA FANENE, LA`AU SEUI,
MA`AE TAEI, and ARCHIE SOLIAI, Counter-claimants.

AVEA T. VA`AFUSUAGA, Intervenor/Counter-claimant

[In re Matai Title "PUAILOA" of the Village of Nu`uuli]

High Court of American Samoa
Land and Titles Division

MT No. 05-01

May 1, 2003

Before KRUSE, Chief Justice, SAGAPOLUTELE, Associate Judge,
MAMEA, Associate Judge and TUPUIVAO, Associate Judge.

Counsel: For Claimant, Asaua Fuimaono
       For Tuitogamaatoe P. Fanene, Charles V. Ala'ilima
       For La`au Seui, Arthur Ripley, Jr.
       For Ma`ae Taei, Salanoa S. P. Aumoeualogo
       For Archie Soliai, Isa-Lei U. Iuli, L.P.
       For Avea Va`afusuaga, Tauivi Tuinei

Claimant Tepatasi M. Puailoa ("Tepatasi") filed with the Territorial Registrar his succession claim to the Puailoa matai title and, in accordance with the statute made and provided for in these cases, the Territorial Registrar publicly posted the claim between December 29, 2000 and February 28, 2001. In due course, Tuitogamaatoe P. Fanene ("Tuitogamaatoe"), La`au Seui ("La`au"), Ma`ae Taei ("Ma`ae"), Archie Soliai ("Archie"), and Avea Va`afusuaga ("Avea") filed their respective succession claims. The resulting dispute, certified "irreconcilable" by the Secretary of Samoan Affairs on May 29, 2001, was eventually referred to the Land and Titles Division in accordance with A.S.C.A. § 1.0409. The matter came on for trial January 27, 28, and 29, 2003, with all parties appearing with counsel. At the conclusion of the evidence, and upon the filing of written final arguments, the matter was taken under advisement.

■ As in all matai title succession disputes, the Court is mandated to follow the four criteria set out in A.S.C.A. § 1.0409(c): (1) best hereditary right; (2) clan support; (3) forcefulness, character and personality, and knowledge of Samoan customs; and (4) value to family, village, and country.

## 1.   Best Hereditary Right

■ This Court has resorted to one of two formulas to calculate the statutory and customary requirement of "hereditary right:" direct descent from the original titleholder and direct descent from the nearest titleholder. *See In re Matai Title "Mulitauaopele"*, 17 A.S.R.2d 75 (Land & Titles Div. 1990). While the former may be appropriately used where family history is largely harmonious, *In re Matai Title "Misaalefua"*, 1 A.S.R.3d 23, 25 (App. Div. 1997), the vast majority of cases have employed the latter, *In re Matai Title "Leiato"*, 3 A.S.R.2d 133, 134 (App. Div. 1986). Here, each party has submitted his/her respective family tree. But these have proven rather difficult to reconcile, even showing inconsistencies in detail among closely related candidates. In circumstances such as here, where family history and genealogical understanding is contentious, the traditional formula for evaluating hereditary right, the shortest descent path to the nearest titleholder, is the overwhelmingly favored yardstick among matai succession candidates. The matter before us proved to be no exception, with the candidates readily resorting to the traditional rule.

*Tepatasi, Tuitogamaatoe, Avea, & Ma`ae*

Tepatasi and Tuitogamaatoe, brother and sister, each claim 50% entitlement since the nearest titleholder in their ancestral line was

Puailoa Tavete, their late father. The pedigree of candidates Avea and Ma'ae show their respective degree of right as 6.25%. The hereditary claims of these four candidates are undisputed.[3]

*La'au*

La'au also claims 6.25% entitlement tracing his pedigree along the same descent lines as have Tepatasi, Tuitogamaatoe, Avea, and Ma'ae. The latter, however, strongly oppose La'au's claim. La'au's genealogical claim is that Puailoa Faletutulu had another son in addition to Puailoa Vaiuli, and that being Filipo, La'au's great-grandfather. In support of his hereditary claim, La'au cites to recent instances where his father, orator Seui La'au, acted as family spokesman for certain Puailoa family affairs during the administration of Puailoa Tavete. Moreover, La'au points to a past succession contest, that came before the High Court as *Pua'ae'o v. Sapunu*, No. 10-1935 (the "1935 succession case"), in which his paternal grandmother, Fa'alogoifo, was a signatory supporter of one the candidates named Sipunu.

The weight of the evidence suggests, however, that Faletutulu had only one son, Vaiuli, who was himself without issue. The evidence indisputably shows that Faletutulu had two sisters, or nieces according to Avea's *gafa* (genealogy), named Aioleolo and Taoa. Taoa's line ended with Puailoa Nouata, who also passed on without issue, while Aioleolo's children gave rise to the most recent titleholders Pua'aelo and Tavete, as well as candidates Tepatasi, Tuitogamaatoe, Avea and Ma'ae.

Notwithstanding La'au's contentions, a person's participation in a Samoan family *fa'alavelave* does not *ipso facto* translate conclusively into evidence of family membership through hereditary connection. The authorities have long ago recognized that under Samoan custom, all persons who live in a Samoan family are considered family members, although not necessarily blood members. *Vaotuua Family v. Puletele*, 3 A.S.R. 145, 147 (Trial Div. 1955). Likewise, those married into a Samoan family are regarded as family members even though they are not blood members. *Asuega v. Mauga*, 3 A.S.R 70, 73 (Trial Div. 1953).

---

[3] We note that Avea and Ma'ae actually share with Tepatasi and Tuitogamaatoe a common ancestor in Puailoa Ta'aseu or Vaiofaga. The Court in *In re Matai Title Sotoa*, 2 A.S.R.2d 15 (Land & Titles Div. 1986), first suggested calculating a candidate's hereditary right by reference to his relationship to the ordinal titleholder as being more desirable, because "every new titleholder does not start a new line of hereditary." A variation of this rule employs blood relation to the nearest common ancestor. *See In re Matai Title Tuiteleleapaga*, 15 A.S.R.2d 90, 90-91 (Land & Titles Div. 1990). If this variation of the Sotoa rule is employed among candidates Tepatasi, Tuitogamaatoe, Avea, and Ma'ae, they would all prove equal in hereditary right.

However, since the enactment of A.S.C.A. § 1.0409(c), blood connection has become a pre-requisite to matai succession eligibility.

In this matter, La`au's father, orator Seui, referred to Sipunu on the witness stand as his mother's "brother." Sipunu, however, acknowledged in his pleadings that he was an "adopted" family member. The 1935 succession case's genealogical charts,[4] while pointing out that Puailoa Vaiuli and Sipunu were first cousins once removed, also pointed out that Vaiuli and Sipunu's kinship connection arose outside the Puailoa family tree. This is also the version of family history as given to Avea by her ancestors; that is, La`au's grandmother Fa`alogoifo was kin to Faletutulu's wife, not Faletutulu. Finally, we note that the 1935 succession case did not go to trial; significantly, it was settled out of court after Sipunu had withdrawn his unsupported claim to the title in favor of Pua`aelo, an undisputed blood heir.

All in all, we find La`au's hereditary connection claim to be, at best, doubtful.

*Archie*

Archie claims his degree of hereditary right as 1/128 or .008%. He singularly traces his heritage to a Puailoa Leo`o, said to be the original titleholder. The evidence here shows that the Puailoa family's modern history began with the admission of Puailoa into the Nu`uuli village council, and thus recited in the village *fa`alupega* (salutation or honorifics) and included in the village constitution, following a marriage alliance with a daughter of High Chief Soliai. Archie's pedigree, however, does not pursue this acknowledged and well known Soliai connection, which brought the Puailoa to the Nu`uuli village council, but rather reaches out into the realm of myth and legend, to the tabled original titleholder known simply as "Leo`o." The connection is tenuous.

Moreover, Archie's position on family history with regards to the listing of prior titleholders, is, like that of a number other candidates in this matter, restricted to, or coincides with, the record of the 1935 succession case. The 1935 succession case has listed between Leo`o and Ta`aseu, the following as Puailoa titleholders: Saumalegalu, Tevita, and Tagipuia. This history varies markedly with the history given in the case *Alo Taisi v. Puailoa*, HC No. 4-1908, where the Puailoa at the time lists, under oath, the following as preceding Ta`aseu: Pulumalesama, Taligalu, Tavili, Faifa, and Taligataleoo. (Trial tr. at 75). This seeming confusion adds another dimension to Archie's pedigree; and that is, its reliability in terms of detailing accurately all generations in his line assuming direct

---

[4] These charts, as well as statements of family history found in the 1935 case, were quite clearly relied upon and used by the candidates.

descent to the original titleholder.

Finally, A.S.C.A. § 1.0409(c) (1) talks in terms of male descendants prevailing over female descendants unless it is apparent on the evidence that "the male and female descendants are equal in families where this has been customary." According to Archie's pedigree, he is descendant from the female line; but there has been no evidence here whatsoever to the effect that in the Puailoa family the male and female descendants are equally entitled. Even if Archie's genealogy is to be accepted, the presumption favoring the male descendants works against his hereditary entitlement to the title.

For purposes herein, we find that Tepatasi and Tuitogamaatoe prevail equally over Avea and Ma`ae, who in turn prevail equally over the claims of La`au and Archie.

2. Clan Support

Under this heading, the Court is required to look into "the wish of the majority or plurality of those clans of the family as customary in that family." A.S.C.A. § 1.0409(c)(2). The candidates were all at sea on the issue of clan definition and their attempts at identifying the family's customary clans.

Archie was the only candidate who attempted to define clans in the context of the pre-Nu`uuli times. By resorting to the familiar explanation of "clan" in terms of descent lines from the issue of the first titleholder, Archie suggested that the family has two clans: Samalaulu, a female branch, and Saumalegalu, a male branch. The problem with this contention is that it is singularly held. There is no supporting view for the premise that the Puailoa family has customarily had a female branch from the outset.

The remaining candidates all attempted to identify the family's clans in the post-Nu`uuli family development context. Ma`aels view vacillated between two and one clan(s), while Avea, Tepatasx and Tuitogamaatoe suggested the evolution of two clans by default, namely Mataua and Sina, the issue of Aioleolo.[5] La`au's position, quite clearly on the basis of the 1935 succession case's record, is that there were three clans: Faletutulu, Aioleolo, and Taoa. But according to the record of the 1935 succession case, the Faletutulu and Taoa's lines died out after Vaiuli and Nouata failed to leave issue.

Whether the Puailoa family is a one clan family or a two clan family, what is clear on the evidence is that no one candidate received the weight

---

[5] Aioleolo's first marriage alliance bore Mataua, the ancestor of Tepastasi and Tuitogamaatoe. Her second marriage alliance bore Sina, the ancestor of Avea and Ma`ae.

of family support. The various meetings held were concluded on a note of divisiveness, with the various candidates unyielding in his/her desire to hold the title.

We find that no candidate prevails on the issue of clan support.

### 3. Forcefulness Character and Personality, an Knowledge of Samoan Customs

Under this heading, the Court is necessarily involved in a comparative evaluation of personal attributes and achievements demonstrating these attributes. Here the Court relies in part on personal observation of each candidate while on the witness stand. *See Asuega v. Manuma*, 4 A.S.R. 616, 629 (Trial Div. 1965) (Court must weigh "personal demeanor, presence of mind, the clarity, speed, and correctness with which answers were given, candidness, the ability to stand up to rigorous cross examination, the education, the self-confidence, and other qualities which are reflected from the speech and behavior of the candidates, matters which can be assessed only from the personal observation of each individual candidate"). At the same time, "[l]eadership ability, honesty, education, public service, involvement in church and village affairs, and previous experience as a matai are some of the factors which aid in meeting this criterion." *In re Matai Title "Leaeno"*, 25 A.S.R.2d 4, 8 (Land & Titles Div. 1994).

After careful review of the candidates' respective backgrounds, their strengths and weaknesses, the court finds that Ma`ae prevails over the other candidates under this heading. He is the only party with creditable matai experience: six years standing as the Ma`ae titleholder. His responses to the judges' questions touching on the issue of knowledge of Samoan custom bespeaks that matai experience. Moreover, he proved to be less prone to equivocation and embellishment while he was on the witness stand.

In terms of career development, Ma`ae impressed us most. Showing tenacity and perseverance together with a firm purpose for personal development, Ma`ae attained his college degree while an enlisted man in the armed forces--a strong statement on forcefulness and character. After retiring from a meritorious career with the U.S Navy, with emphasis on property management, Ma`ae returned to the territory with his education and work related expertise to serve his family, church, village, and government. Comparatively, his superior resume reflects by far the greater responsibilities entailed within the positions he holds with his Church and the number of important federal and local government commissions.

In short, Ma`ae best embodies "[l]eadership ability, honesty, education, public service, involvement in church and village affairs, and previous

233

experience as a matai . . . which aid in meeting this criterion." *Id.* He best fits the bill for forcefulness, character and personality, and knowledge of Samoan customs.

### 4. Value to Family, Village, and Country

Under this heading we also find that Ma`ae stands out decisively from the others. Ma`ae's service to the country singularly stands out in terms of his past service to national government, while serving 23 years in the military, and in terms of his on-going 'service to the territorial government. As previously noted, his superior resume reflects the different federal and local government commissions in which Ma`ae has participated, including serving on the U.S. Labor Department's biennial Wage and Hour Review Board for the territory. He continues to serve the local government as a property management specialist.

In terms of value to family and village, Ma`ae has creditable matai experience and he would not be subjected to the difficulties associated with the gender bias currently in effect with the Nu`uuli village council. The title Puailoa is included within the village honorifics *taumafaalofi* and effective representation and recognition within the council will only enhance the family's prestige and well-being within the village. Additionally, the Puailoa family has relatively large land assets that require appropriate management and conservation skills. (Current dealings with the family's land tend to reveal improvident and preclusive development, an apparent reason for the large slate of candidates.) Ma`ae is uniquely qualified in this regard.

Furthermore, we are confident that Ma`ae is in the best position to lead and bring the family together. With the large number of candidates contesting succession, and from our observation of the candidates and in listening to them, we find that there is an unmistakable atmosphere of distrust among the Puailoa family factions. This state of affairs certainly has something to do with the family's large real estate holdings; it has something to do with the family's history with third party adverse claimants dating back to pre-American Samoa Government times; and it also has something to do with the perception of dominant use by the immediate heirs of the last titleholder. La`au and Archie are relatively young, but their leadership potential is solidly grounded in terms of education and service to family, church, village and country. As prospective traditional leaders, their biblical "season" will soon come.

Tepatasi and Tuitogamaatoe's side of the family has dominated the title since the 1930s, and the fact that they were unable to bridge their differences within their own immediate circle does not bode well in terms of either being a potential family mediator/conciliator. It is apt for a descendant of Sina to succeed.

Ma`ae's track record and circumstances deems him best suited for

leadership potential at this time. We rate Ma`ae first on this criterion.

## CONCLUSION & ORDER

Based on the foregoing, we hold that Ma`ae is qualified to hold the title Puailoa as he prevails on the third and fourth statutory criteria although preceded by Tepatasi and Tuitogamaatoe on the first. The second criterion is discounted.

The Territorial Registrar shall, in accordance with A.S.C.A. § 1.0409 (b), register the metal title Puailoa, attached to the village of Nu`uuli, in candidate Ma`ae Taei.

It is so ordered.